IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DAWN FRISENDA,**

        **Plaintiff,**

**v.**  //  **CIVIL ACTION NO. 1:17CV89**
                                         **(Judge Keeley)**

**LINDSEY FLOYD and STATE FARM**
**MUTUAL AUTOMOBILE INSURANCE COMPANY,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 19]**

        The defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), has filed a Motion for Partial Summary Judgment, presenting the question whether West Virginia law requires that it pay a <u>pro rata</u> share of the attorney's fees and costs incurred by the plaintiff, Dawn Frisenda ("Frisenda"), when State Farm applies the non-duplication of benefits provision applicable to Frisenda's underinsured motorist ("UIM") coverage. Concluding that State Farm is under no such obligation, the Court **GRANTS** the motion for partial summary judgment (Dkt. No. 19).

### I. FACTUAL AND PROCEDURAL BACKGROUND

        The Court recites the facts based on the parties' undisputed submissions, and views them in the light most favorable to Frisenda, the non-moving party. <u>Providence Square Assocs., LLC v. G.D.F., Inc.</u>, 211 F.3d 846, 850 (4th Cir. 2000). On March 20, 2015, Frisenda was involved in an automobile collision with the

defendant, Lindsey Floyd ("Floyd"). Frisenda alleges that Floyd crossed the center line and struck the driver's side of Frisenda's vehicle (Dkt. No. 1-1 at 2). At the time of the accident, State Farm's policy with Frisenda provided $100,000 of UIM coverage and $25,000 of medical payments coverage ("MPC"). Floyd's policy with Westfield Insurance Co. ("Westfield") provided $50,000 in liability coverage.

Frisenda's policy contained provisions regarding reimbursement, subrogation, and non-duplication of benefits. State Farm retained the right to recover certain payments, as follows:

> **12. Our Right to Recover Payments**
>
> Death, Dismemberment and Loss of Sight Coverage and Loss of Earning Coverage payments are not recoverable by *us.* Under all other coverages, the following apply:
>
> a.  **Subrogation**
>
>     If *we* are obligated under this policy to make payment to or for a *person* who has a legal right to collect from another party, then *we* will be subrogated to that right to the extent of *our* payment.
>
>     The *person* to or for whom *we* make payment must help *us* recover *our* payments by:
>
>     (1) doing nothing to impair that legal right;
>     (2) executing any documents *we* may need to assert that legal right; and

        (3)    taking legal action through ***our*** representatives when ***we*** ask; and

   b.   **Reimbursement**

       If ***we*** make payment under this policy and the ***person*** to or for whom ***we*** make payment recovers or has recovered from another party, then that ***person*** must:

       (1)    hold in trust for ***us*** the proceeds of any recovery; and
       (2)    reimburse ***us*** to the extent of ***our*** payment.

(Dkt. No. 19-3 at 40). In addition, the policy provided for the non-duplication of UIM benefits:

   The most ***we*** will pay for all damages resulting from ***bodily injury*** to any one ***insured*** injured in any one accident, including all damages sustained by other ***insureds*** as a result of that ***bodily injury*** is the lesser of:

   1.   the limit shown under "Each Person"; or

   2.   the amount of all damages resulting from that ***bodily injury***, reduced by:

   . . .

       c.    any damages that have already been paid or that are payable as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

Id. at 25.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 19]**

With the assistance of counsel, Frisenda settled her claim for Floyd's $50,000 policy limits. On July 7, 2016, Frisenda advised State Farm of her settlement with Westfield, which was contingent on State Farm's consent, waiver of subrogation, and full release of Floyd. Frisenda also reiterated that she had incurred $34,809.27 in medical expenses, and demanded that State Farm pay her the full $100,000 UIM coverage available under her policy (Dkt. No. 33-1). On August 8, 2016, State Farm responded that it would settle Frisenda's UIM claim for $5,707, but failed to address the pending settlement with Westfield (Dkt. No. 33-2). Following further inquiry, on August 30, 2016, State Farm consented to the settlement with Westfield and waived its right to subrogation (Dkt. Nos. 33-3; 33-4).

On September 20, 2016, State Farm indicated that, after taking into account the non-duplication of damages paid as expenses under MPC, it had determined the amount of the proposed settlement as follows:

- Medical Bills                $36,716.06
- Future Medical               $13,216.00
- Lost Wages                   $1,537.17
- General Damages              $17,000.00
- Future General Damages       $2,000.00

- Non Duplication Offsets      -$14,761.61 for MPC
- Other Insurance              -$50,000.00

(Dkt. No. 33-7). Frisenda asserts that after she provided supplemental records and bills State Farm increased its settlement offer to $7,000. Frisenda then advised State Farm that her lost earning capacity was approximately $174,312, and again demanded that State Farm tender the full $100,000 of available UIM coverage. Rather than do so, State Farm instead requested additional information regarding the permanency of Frisenda's injuries (Dkt. No. 1-1 at 3-4).

On March 15, 2017, Frisenda filed this action in the Circuit Court of Marion County, West Virginia, against Floyd and State Farm (Dkt. No. 1-1). In addition to her negligence claim against Floyd, Frisenda alleged claims of breach of contract, breach of duty of good faith and fair dealing, and violations of the West Virginia Unfair Trade Practices Act against State Farm. Id. at 5-14. She specifically alleged that "State Farm failed to reduce its medical payment reimbursement amount by its pro rata share of attorney's fees and costs pursuant to Federal Kemper Insurance Company v. Arnold, 183 W. Va. 31, 393 S.E.2d 669 (1990)" (Dkt. No. 1-1 at 4).

State Farm timely removed the case to this Court and filed its answer on May 16, 2017 (Dkt. Nos. 1; 3). In relevant part, State Farm "denie[d] that it sought reimbursement of medical payments coverage, but affirmatively state[d] and allege[d] that it applied

5

non-duplication of medical payments coverage pursuant to State Farm Mutual Automobile Insurance Company v. Schatken, 737 S.E.2d 229 (W. Va. 2012)" (Dkt. No. 3 at 5). Following a scheduling conference on July 28, 2017, the Court set a briefing schedule regarding whether State Farm is required to pay a pro rata share of Frisenda's attorney's fees and costs when it applies its policy's non-duplication provision (Dkt. Nos. 8; 9). On August 2, 2017, State Farm advised Frisenda that it was waiving the subrogation of medical payments (Dkt. No. 33-8).

In its motion for partial summary judgment, State Farm contends that neither West Virginia law nor the language of the policy at issue requires that it pay attorney's fees and costs when applying the non-duplication of benefits provision to prevent a double recovery of Frisenda's damages (Dkt. No. 19). State Farm argues that, although it must share in fees and costs when seeking reimbursement, non-duplication is distinct from reimbursement (Dkt. No. 20 at 5-9). In response, Frisenda contends that non-duplication accomplishes the same purpose as reimbursement, and that State Farm therefore must pay its fair share of the cost Frisenda incurred to create the $50,000 "common fund" from Westfield (Dkt. No. 33 at 11-17).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 19]**

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence, 211 F.3d at 850. The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing that there are no genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The

"mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

### III. APPLICABLE LAW

As a threshold matter, the Court must distinguish among reimbursement, subrogation, and non-duplication under West Virginia law. Generally speaking, subrogation and reimbursement relate to the distribution of recoveries against a wrongdoer or the wrongdoer's liability carrier, while non-duplication prevents an insured from receiving a double recovery of damages. See State Farm Mut. Auto. Ins. Co. v. Schatken, 737 S.E.2d 229 (W. Va. 2012).

**A.   Subrogation and Reimbursement**

An insurer may seek subrogation from a third-party wrongdoer of sums that the insurer has already paid to its insured but for which the wrongdoer is liable to the insured. See Richards v. Allstate Ins. Co., 455 S.E.2d 803, 805 (W. Va. 1995). "A provision in an insurance policy providing for the subrogation of the insurer to the rights of the insured to the extent medical payments are advanced to such insured . . . is not invalid as against the public

8

policy of [West Virginia]." Id. at Syl. Pt. 1 (quoting Syl., Travelers Indem. Co. v. Rader, 166 S.E.2d 157 (1969)).

In addition, an insurer may provide for reimbursement of medical payments from an insured who recovers from the wrongdoer:

> [I]n the absence of a conflict of interest with its insured, when an insurance policy (a) allows an insurance company to seek "reimbursement" of medical expense payments to an insured out of any recovery obtained by the insured from a third party; (b) the insured obtains a recovery from a third party that duplicates the insurance company's medical expense payments to the insured; and (c) when the insurance company is also the liability insurer of the third party, then the insurance company may seek reimbursement of those medical expense payments from the insured.

Syl. Pt. 3, Ferrell v. Nationwide Mut. Ins. Co., 617 S.E.2d 790, 795-96 (W. Va. 2005).

Exercising a contractual right to reimbursement, however, comes at an equitable cost. Courts in West Virginia have authority to impose attorneys' fees and costs on a common fund:

> Except in rare instances, the power of a court to require one party to contribute to the fees of counsel of another must be confined to cases where the plaintiff, suing in behalf of himself and others of the same class, discovers or creates a fund which enures to the benefit of all.

Syl. Pt. 1, Sec. Nat'l Bank & Trust Co. v. Willim, 180 S.E.2d 46 (W. Va. 1971) (quoting Syl. Pt. 2, Roach v. Wallins Creek Collieries Co., 160 S.E. 860 (W. Va. 1931)). The equitable common-fund doctrine recognizes "that someone 'who recovers a common fund

**FRISENDA V. FLOYD**                                              1:17CV89

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 19]**

for the benefit of persons other than himself' is due 'a reasonable attorney's fee from the fund as a whole.'" US Airways, Inc. v. McCutcheon, 569 U.S. 88, 104 (2013) (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)). "State courts . . . routinely use the common-fund rule to allocate the costs of third-party recoveries between insurers and beneficiaries." Id. at 104 & n.8. Therefore, when an insured retains her own attorney to recover funds from a wrongdoer, she often creates a "common fund" that enures to the benefit of her insurer. Id.

The Supreme Court of Appeals recognized this application of the common-fund doctrine in Federal Kemper Insurance Co. v. Arnold, where it reasoned that "reimbursement of payments . . . should reflect the [routine] cost to the covered person of obtaining a recovery against the person at fault." 393 S.E.2d 669, 671 (W. Va. 1990). An insurer cannot "sit back and permit its insured to proceed with an action, expecting to share in the avails of that proceeding without the burden of any of the expense." Id. (quoting Klacik v. Kovacs, 268 A.2d 305, 308 (N.J. Super. 1970)). Therefore, "reimbursement[s] should be reduced by the insurer's pro rata share of the costs to the covered person of obtaining the recovery." Id. at Syl. Pt. 3; see also Fauble v. Nationwide Mut. Fire Ins. Co., 664 S.E.2d 706, 710 (W. Va. 2008).

B.  **Non-Duplication of Benefits**

The Supreme Court of Appeals addressed the validity of State Farm's non-duplication of benefits policy provision in State Farm Mutual Automobile Insurance Co. v. Schatken. There the Schatkens "were injured when their vehicle was struck by a vehicle driven by 19-year-old Ida Trayter." With State Farm's consent, they accepted the $25,000 coverage limits offered by the tortfeasor's carrier, and subsequently exhausted the $5,000 in medical payments coverage in their State Farm policy. Schatken, 737 S.E.2d at 231. The Schatkens' policy also contained reimbursement and non-duplication provisions identical to those at issue in this case. Id. at 232. State Farm offered to settle their claim under their UIM coverage but, pursuant to the non-duplication provision, reduced the settlement offer by both "the $25,000.00 liability limits and $5,000.00 medical payments" the plaintiffs had already received. Id. at 231-32.

The Schatkens argued on appeal that this reduction violated the provision of W. Va. Code § 33-6-31(b), which requires that "[n]o sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy." Id. at 232. In addition, they argued that the

application of State Farm's non-duplication provision was "patently unfair" because it allowed State Farm to benefit from their recovery against the tortfeasor "without any consideration for attorney's fees" that would normally be accounted for under reimbursement. Respondent's Brief at 12-15, State Farm Mut. Auto. Ins. Co. v. Shatken, 737 S.E.2d 229 (W. Va. 2012) (No. 11-1142), http://www.courtswv.gov/supreme-court/calendar/2012/briefs/oct12/11-1142respondent.pdf.

The Supreme Court of Appeals rejected this argument, reasoning that State Farm's non-duplication provision was not an impermissible "attempt to reduce the monetary extent of its coverage," but rather prevented a "double recovery of damages." Schatken, 737 S.E.2d at 234-35 (internal quotation omitted). In other words, a non-duplication provision in an automobile insurance policy prevents a double recovery rather than "erod[ing] coverage" available to an insured, given that an insured remains entitled to the full amount of UIM coverage if his damages meet or exceed the policy limitations even after non-duplication is applied. Id. at 235-37. Notably, the court did not address directly the plaintiffs' argument that non-duplication prevented them from being "made whole" because the provision did not account for their attorney's fees and costs. Instead, the Supreme Court of Appeals concluded

that non-duplication "in no way undermines the 'preeminent public policy of this state . . . that the injured person be <u>fully compensated</u> for his or her <u>damages</u>.'" <u>Id.</u> at 236 (emphasis in original).[1]

### IV. DISCUSSION

Frisenda does not dispute that, as a consequence of <u>Schatken</u>'s holding, State Farm is entitled to apply its non-duplication provision in an amount equal to the medical payments advanced to her. Rather, she contends that it is inequitable for State Farm to apply non-duplication without accounting for the costs she incurred to recover $50,000 from Floyd's liability carrier (Dkt. No. 33 at 6). Frisenda argues that State Farm's obligation to share in her attorney's fees and costs with regard to amounts paid under MPC

---

[1] State Farm argues that, because the Supreme Court of Appeals did not address the plaintiffs' argument regarding attorney's fees and costs in <u>Schatken</u>, it impliedly rejected the position now posited by Frisenda (Dkt. No. 34 at 8-10). This position finds support in several recent cases; indeed, this Court has previously acknowledged the force of the argument. <u>See</u> <u>Smith v. State Farm Mut. Auto. Ins. Co.</u>, No. 5:12CV23, 2014 WL 2533832, at *7 (N.D.W.Va. June 4, 2014) (citing Order Denying Pls.' Mot. for Leave to File Am. Compl., <u>Schatken v. State Farm Mut. Auto. Ins. Co.</u>, No. 10-C-367 (Cir. Ct. Jefferson Cty., W. Va., July 11, 2013) (denying motion to amend on remand)). However, the question presented and the holding in <u>Schatken</u> were confined to whether State Farm's non-duplication provision violated W. Va. Code § 33-6-31(b) under <u>State Automobile Mutual Insurance Co. v. Youler</u>, 396 S.E.2d 737 (W. Va. 1990). <u>See</u> <u>Schatken</u>, 737 S.E.2d at 237.

should not turn on whether she obtained the policy limits from Floyd's liability carrier. Id. Frisenda's argument is best illustrated by two examples that utilize the coverage available in this case.

The first example assumes that a no-fault insured recovers less than the policy limits from the tortfeasor's liability carrier, as follows:

- Tortfeasor's Liability Coverage:     $50,000.00
- No-Fault Insured's MPC:              $25,000.00
- No-Fault Insured's UIM Coverage:     $100,000.00
- Total Damages:                       $40,000.00

- No-Fault MPC Advancements:           $25,000.00
- Liability Settlement:                $40,000.00
- Attorney's Fees and Costs:           -$13,333.33
- Reimbursement:                       -$16,666.67
- Insured's Total Recovery:            $35,000.00

In this example, the insured retained counsel under a one-third contingency fee agreement to secure the $40,000 settlement from her tortfeasor's liability carrier. But, in doing so, the insured never triggers her UIM coverage, because she did not recover the tortfeasor's policy limits.[2] In order to be reimbursed for medical

---

[2] The Court acknowledges that an insured actually may incur damages in excess of the tortfeasor's liability coverage, but be unable to obtain policy limits from the carrier. Because, in this case, State Farm's UIM coverage is only triggered when its insured obtains policy limits (Dkt. No. 19-3 at 24), the Court has not considered that factual scenario.

payments, the insurer must account for the cost that its insured incurred to secure the common fund from the liability carrier. Pursuant to <u>Federal Kemper</u>, in this example, the insurer does so by reducing its $25,000 reimbursement by one-third to $16,666.67.

The second example assumes that the no-fault insured recovers the policy limits from the tortfeasor's carrier, and in fact incurs $30,000 in damages above those policy limits:

- Tortfeasor's Liability Coverage: $50,000.00
- No-Fault Insured's MPC: $25,000.00
- No-Fault Insured's UIM Coverage: $100,000.00
- Total Damages: $80,000.00

- No-Fault MPC Advancements: $25,000.00
- Liability Settlement: $50,000.00
- Attorney's Fees and Costs: -$16,666.67
- UIM Settlement: $5,000.00
- Attorney's Fees and Costs: -$1,666.67
- Insured's Total Recovery: $61,666.66

Here, the insured retained counsel pursuant to a one-third contingency fee agreement, and collected the $50,000 policy limits from her tortfeasor's liability carrier, thus triggering the insured's UIM coverage for her remaining $30,000 in damages. In reliance on the non-duplication provision of its policy, the insurer reduces what would otherwise be a $30,000 UIM settlement by the $25,000 already advanced under MPC, thus arriving at a UIM settlement of $5,000. Under State Farm's approach, the insurer does

not account for attorney's fees and costs when crediting the $25,000.

At bottom, Frisenda argues that it is inequitable for State Farm to apply its policy's non-duplication provision where it could have paid the full $30,000 in UIM coverage and recovered the MPC advancement through reimbursement (Dkt. No. 33 at 15). To account for this perceived inequity, Frisenda would have the Court extend Federal Kemper to scenarios in which an insurer applies non-duplication rather than reimbursement. Frisenda cites absolutely no authority in support of her position, and every court in West Virginia that has considered the question has rejected Frisenda's argument. See Smith, No. 5:12CV23, 2014 WL 2533832; Walker v. State Farm Mut. Auto. Ins. Co., No. 5:11cv529, 2013 WL 2949042 (S.D.W.Va. June 14, 2013); Order Granting the Defs.' Mot. for J. on the Pleadings, Pinkerman v. State Farm Mut. Auto. Ins. Co., No. 13-C-167 (Cir. Ct. Boone Cty., W. Va., Aug. 24, 2015); Order Denying Pls.' Mot. for Leave to File Am. Compl., Schatken, No. 10-C-367.

Contrary to Frisenda's repeated assertion that non-duplication of benefits is a "legal fiction" equivalent to reimbursement (Dkt. No. 33 at 6, 14-15), these separate provisions in State Farm's policy have different meanings under West Virginia law. Smith, No. 5:12CV23, 2014 WL 2533832, at *7. Insurers may seek reimbursement

from an insured who recovers damages from a third-party. Ferrell, 617 S.E.2d 790, Syl. Pt. 3. When reimbursement occurs, the insurer is expected to pay a fair share of the attorney's fees and costs expended that resulted in the "common fund." See Fed. Kemper, 393 S.E.2d 669, Syl. Pt. 3. Unlike reimbursement, however, non-duplication operates to prevent an insured from receiving a double recovery from the insurer itself. See Schatken, 737 S.E.2d at 234-37.

In Pinkerman v. State Farm Mutual Automobile Insurance Co., the Circuit Court of Boone County, West Virginia, cited with approval reasoning of the Supreme Court of Vermont in Ovitt v. American Home Assurance Co., 971 A.2d 662 (Vt. 2009), to explain why non-duplication does not result in the insurer recovering from a common fund created by its insured. In Ovitt, the court acknowledged the rule that insurers typically must share in attorney's fees and costs when they seek reimbursement of medical payments from a common fund. Id. at 664 (citing Guiel v. Allstate Ins. Co., 756 A.2d 777 (Vt. 2000)). However, this same logic does not apply to an insurer's non-duplication of medical payments:

> [P]laintiffs have not shown how their lawsuit has conferred any benefit on Concord with respect to its $5,000 medical payment. Concord is not, as a result of this judgment, getting back the $5,000 it already paid plaintiffs; instead, it is simply claiming credit against

17

> a $105,400 judgment for $5,000 already paid. Concord is in the same position with respect to the $5,000 that it was in after it paid plaintiffs under the medical payments coverage provision of their insurance policy and before this lawsuit was initiated-the $5,000 remains in plaintiffs' possession. Absent any benefit to Concord, it is senseless to suggest that Concord should pay attorney's fees to plaintiffs. There are simply no equities that favor plaintiffs' receipt of attorney's fees from Concord.

Id. at 665; see Order Granting the Defs.' Mot. for J. on the Pleadings, Pinkerman, No. 13-C-167.

In this case, Frisenda's $50,000 settlement with Westfield did not create a common fund benefitting State Farm that would warrant the reimbursement of attorney's fees and costs. Frisenda retained the full amount of her settlement with Floyd's liability carrier, as well as the amount paid to her by State Farm under MPC.[3] Because State Farm waived subrogation and is not seeking reimbursement (Dkt. No. 34 at 3, 7), it did not "sit back and permit its insured to proceed with an action, expecting to share in the avails of that proceeding without the burden of any of the expense." Fed. Kemper, 393 S.E.2d at 671. It will not benefit directly or indirectly from

---

[3] Notably, MPC "is not an additional layer of underinsured coverage," but rather "permits the insured to gain speedy reimbursement for medical expenses incurred as a result of a collision without regard to the insured's fault." Schatken, 737 S.E.2d at 235 (quoting Ferrell, 617 S.E.2d at 796). Frisenda realized the benefit of her MPC when she received payments toward her medical expenses in a prompt and timely manner. See id.

Frisenda's "recovery against the person at fault." Id. Rather, by deducting amounts paid under MPC from its UIM settlement offer, State Farm is permissibly seeking to address only Frisenda's "remaining uncompensated damages." Schatken, 737 S.E.2d at 235 (emphasis in original).[4]

Undoubtedly, Frisenda's total recovery would have been greater had State Farm sought reimbursement rather than relied on the valid and enforceable non-duplication provision of its policy. See Schatken, 737 S.E.2d 201. But no common fund having been created, no reason exists in equity to erase the distinction between these provisions. Moreover, by asking the Court to treat non-duplication as reimbursement, Frisenda "seek[s] to be relieved from the application of the non-duplication of benefits language by attempting to accentuate the impact of the provision on [her]." Walker, No. 5:11cv529, 2013 WL 2949042, at *6. The Court concludes that it lacks the authority to so relieve her. See id.

---

[4] Frisenda speculates that she would not be fully compensated under W. Va. Code § 33-6-31(b) if the jury determines that her damages amount to at least $75,000 because she would then owe her attorney one-third of the $25,000 already received under MPC (Dkt. No. 33 at 16-17). This argument is misguided. The requirement that an injured person be fully compensated for her damages relates to the availability of coverage, not the insured's contingent fee arrangement with counsel. See Schatken, 737 S.E.2d at 234-35.

## V. CONCLUSION

For the reasons discussed, the Court **GRANTS** State Farm's Motion for Partial Summary Judgment (Dkt. No. 19), and **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

It is so **ORDERED**.

DATED: April 5, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE
